# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * *
CHRISTINE MAUPIN,                *      No. 23-537V
parent of minor child, B.M.,     *
                                 *
              Petitioner,        *
                                 *      Special Master Christian J. Moran
v.                               *
                                 *      Filed: August 20, 2025
SECRETARY OF HEALTH              *
AND HUMAN SERVICES,              *
                                 *
              Respondent.        *
* * * * * * * * * * * * * * * * * * * * * * * *
```

Jessica Wallace, Siri & Glimstad, LLP, Aventura, FL, for petitioner;
Camille Jordan Webster, United States Dep't of Justice, Washington, D.C., for
respondent.

## UNPUBLISHED DECISION DENYING COMPENSATION[1]

Petitioner, Christine Maupin, filed a petition for compensation on April 18,
2023.  Ms. Maupin alleged that the diphtheria-tetanus-acellular pertussis ("DTaP"),
hepatitis B ("Hep B"), inactivated polio ("IPV"), and rotavirus vaccines,
administered to her child, B.M., on August 19, 2021, caused B.M. to suffer from
infantile spasms and developmental delays.  Am. Pet. at 1.   On July 30, 2025, Ms.
Maupin filed a motion for a decision dismissing her petition.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must
be made publicly accessible and will be posted on the United States Court of Federal Claims'
website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance
with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and
Promotion of Electronic Government Services). This means the Decision will be available to
anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14
days to identify and move to redact medical or other information, the disclosure of which would
constitute an unwarranted invasion of privacy. Any changes will appear in the document posted
on the website.

I.  **Procedural History**

Ms. Maupin filed her petition on April 18, 2023, alleging that the DTaP, Hep B, IPV, and rotavirus vaccines administered to her child B.M. on August 19, 2021, caused B.M. to suffer from infantile spasms and developmental delays.  She filed an amended petition on July 17, 2023 to correct exhibit date ranges and exhibit titles.  The case was reassigned to the undersigned on December 11, 2023, and deadlines were then set for the Secretary's Rule 4(c) Report and for petitioner's expert report.  Order, issued Dec. 15, 2023.

The Secretary filed his Rule 4(c) Report on March 8, 2024, arguing against compensation.  The Secretary noted that none of B.M.'s treating physicians opined that any of the vaccines had harmed her, and that petitioner had not yet offered a reputable theory establishing that the vaccines could or did cause the alleged injury.  Resp't's Rep. at 10.  Additionally, the Secretary argued that the record showed an onset of symptoms one week prior to the vaccinations.  Id.

On September 11, 2024, petitioner filed an expert report from pediatric neurologist and geneticist, Dr. Huq.  Exhibit 13.  Dr. Huq opined that B.M.'s "brain abnormalities made her more susceptible to suffer from seizures but the vaccine induced brain inflammation also played a significant role in the pathogenesis of her condition."  Id. at 7. He stated that, if the brain abnormalities or malformations were solely responsible for B.M.'s infantile seizures, [Dr. Huq] would have expected her spasms to be more severe and tractable."  Id.  Dr. Huq acknowledged that Ms. Maupin observed "weird eye movements" prior to August 19, 2021, but opined that this "was not concerning enough to be discussed with any medical provider and was more likely normal," and "not epileptic and had nothing to do with B.M.'s infantile spasms that developed post-vaccination."  Id. at 21.  He further stated that the onset of B.M.'s infantile spasms within 24 hours of receiving the vaccinations occurred within a medically acceptable timeframe.  Id. at 22.

In response, the Secretary filed a report from a pediatric neurologist, Dr. Kruer, and a pediatric immunologist, Dr. McCusker, on December 12, 2024.  Exhibits A and C.  Dr. Kruer questioned how Dr. Huq could claim that Ms. Maupin misinterpreted B.M.'s symptoms prior to her vaccinations, as Dr. Huq was not present and the events were not recorded on video or EEG.  Exhibit A at 2.  He also disputed Dr. Huq's statement that B.M.'s brain MRI abnormalities were

unlikely to be the main cause of her infantile spasms, explaining that brain malformations like B.M.'s develop before birth and "represent one of the most frequent causes of infantile spasms." He opined that "B.M.'s brain malformation alone accounts for her infantile spasms." Id. Dr. Kruer stated that Dr. Huq had provided no evidence to support his opinion that spasms caused solely by brain abnormalities or malformations would have been "more severe or intractable." Id. at 2-3.

Dr. Kruer further argued that there is "no evidence whatsoever that B.M. had brain inflammation," and that brain inflammation is only one reason why a child may have seizures. Exhibit A at 3. Given the lack of evidence of B.M.'s brain inflammation, he disputed the relevance of the papers reviewed by Dr. Huq. Id. Dr. Kruer also stated that the timing of B.M.'s spasms--within 24 hours of receiving the vaccines—is not compatible with the IOM's report on the adverse effects of vaccines and the time it takes for an adaptive immune response under a molecular mimicry theory. Id.

Dr. McCusker reviewed several studies and concluded that the data did "not support **any** epilepsy-causing potential of peripherally released IL1β or any of the other so-called pro-inflammatory, innate, cytokines that may be elevated peripherally following vaccination." Exhibit C at 5-6 (emphasis in original). On the contrary, Dr. McCusker stated that "evidence suggests that endogenous (CNS) production and activity of IL1β is evident **following** seizures," and that there is "no persuasive evidence presented suggesting that immune responses induced following vaccination **result in** CNS trauma leading to seizures." Id. at 6 (emphasis in original). "These data consistently show that epilepsy develops in the central nervous system following CNS trauma which may lead to neuroinflammation." Id.

Dr. McCusker also noted that B.M. was diagnosed with IESS (infantile epileptic spasms syndrome), and not autoimmune encephalopathy. Dr. McCusker stated that there is "no evidence in the clinical record to support [Dr. Huq's] claim" that B.M. may have developed autoimmune epilepsy secondary to molecular mimicry. Exhibit C at 7. Further, Dr. McCusker stated that the incidence of epilepsy is highest in infancy, and that studies support the hypothesis that predisposing factors within the child, rather than vaccination, cause neurologic deterioration. Id. In addition, "data from large studies do not support an etiological link between vaccination and onset of epilepsy," but rather,

"neurological events such as IESS occur independently of vaccination." <u>Id.</u> at 9-10.  Dr. McCusker concluded that "no persuasive evidence in the clinical record of the extant literature support[s] a role of vaccination in the development of [B.M.'s] infantile spasms and developmental delay." <u>Id.</u> at 10.

Following this round of reports, Ms. Maupin was ordered to file a supplemental expert report, or a status report stating that she would not submit any additional reports, by February 28, 2025.  Order, issued Jan. 6, 2025.  On February 20, 2025, Ms. Maupin moved for an additional 30 days to file a report, stating that her expert needed additional time to complete his review and draft the response.  The motion was granted, extending the deadline to March 31, 2025.  Order, issued Feb. 21, 2025.

Ms. Maupin submitted a supplemental report from Dr. Huq on March 31, 2025.  Exhibit 138.  Dr. Huq responded to both Dr. Kruer and Dr. McCusker, maintaining his opinion that the August 19, 2021 vaccination "triggered B.M.'s infantile spasms and contributed to her subsequent neurodevelopmental disorder." <u>Id.</u> at 6.  He reiterated that B.M.'s eye movements were not sufficiently alarming to be reported or recorded and opined that Ms. Maupin would have raised the issue early if she had been concerned.  <u>Id.</u> at 2.  He also addressed Dr. McCusker's argument that inflammation is a consequence rather than a cause of seizures, stating that it can be both a trigger and a consequence.  <u>Id.</u> at 4.

The day after submitting Dr. Huq's second report, Ms. Maupin filed a status report stating that she was "currently investigating the need to file an expert report in immunology in addition to the expert report of Dr. Huq," and proposed filing a status report by May 1, 2025, stating whether or not she would file an expert report from an immunologist.  Pet'r's Status Rep., filed April 1, 2025.

Ms. Maupin's request to add an immunologist was denied without prejudice to renew.  Order, issued April 2, 2025.  As Dr. McCusker's report had been submitted more than three months prior to Ms. Maupin's status report, it was unclear whether Ms. Maupin had acted with diligence to investigate the potential need for an immunologist.  Ms. Maupin was afforded time to file a renewed motion to add an immunologist, describing her efforts to investigate the need for an immunologist.

Ms. Maupin filed a status report on April 14, 2025, advising that the attorney-client relationship had been ruptured due to differences in opinion on how to proceed.  Ms. Maupin requested additional time to provide an update on how she would proceed and/or to secure new counsel.  Ms. Maupin proceeded to research and interview potential new counsel.  Pet'r's Status Rep., filed May 28, 2025.  She again requested and was given additional time to determine how to proceed.  On June 30, 2025, Ms. Maupin advised that she intended to file a motion to dismiss her petition.  The motion to dismiss was filed on July 30, 2025.

## II.    Analysis

To receive compensation under the National Vaccine Injury Compensation Program ("Program"), a petitioner must prove either 1) that the vaccinee suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of the vaccinations, or 2) that the vaccinee suffered an injury that was actually caused by a vaccine.  See §§ 300aa-13(a)(1)(A) and 300aa-11(c)(1).  Under the Act, a petitioner may not be given a Program award based solely on the petitioner's claims alone.  Rather, the petition must be supported by either medical records or by the opinion of a competent physician.  § 300aa-13(a)(1).

In this case, Ms. Maupin filed medical records and expert reports in support of her claim.  Nevertheless, Ms. Maupin wishes to have her claim dismissed and judgment entered against her.  Given Ms. Maupin's clear intent that a judgment issue in this case, the undersigned will construe this as a motion filed pursuant to 42 U.S.C. § 300aa-21(b) (regarding involuntary dismissal).

To conform to § 12(d)(3), a decision must "include findings of fact and conclusions of law."  To conform to section 12(d)(3), a decision must "include findings of fact and conclusions of law."  For causation-in-fact cases, the Federal Circuit has defined elements of a petitioner's claim.  Petitioners bear a burden to show by a preponderance of the evidence that the vaccination brought about their injury by providing:

(1) a medical theory causally connecting the vaccination and the injury;
(2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and
(3) a showing of a proximate temporal relationship between vaccination and

injury.

<u>Althen v. Sec'y of Health & Hum. Servs.</u>, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

As the Dr. Kruer noted, B.M. displayed seizure-like activity such as eye movements prior to her vaccination.  Beyond stating that these eye movements were apparently not concerning enough to be reported or recorded, Dr. Huq does not provide support for his opinion that the symptoms were merely "random eye twitches which were not epileptic and have nothing to do with infantile spasms." Exhibit 138 at 1. That the pre-vaccination eye movements might have been different in scope or severity does not mean that they were not symptoms of a seizure condition.  Therefore, Ms. Maupin has not met her burden under the second <u>Althen</u> prong.

**Thus, this case is DISMISSED WITH PREJUDICE for insufficient proof.  The Clerk shall enter judgment accordingly.**  <u>See</u> Vaccine Rule 21(b).

**IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master

6